UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VIRGIL GREEN,

               Plaintiff,                                  Hon. Janet T. Neff

v.                                               Case No. 1:09-CV-130

SHIRLEE HARRY, et al.,

               Defendants.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants' Motion to Dismiss. (Dkt. #26). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

        Plaintiff initiated this action on February 13, 2009, against the following Defendants: Shirlee Harry, Mike Singleton, Sharon Wells, Ellen Perry, Carl Burgess, Anthony Henry, Ron Almy, Frank Nobles, Mike Brown, Chad Hardy, and Rocky Smith.

        The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Plaintiff is a member of the Orthodox Sunni Muslim faith. His religious beliefs are "sincerely held and require a daily Halal Diet in accordance with the Holy Qur'an." A "central tenet" of Plaintiff's religious faith is the observance of "fasting for the Holy Month of Ramadan." Since arriving at the Muskegon Correctional Facility (MCF) in 2006, "prison officials" refused to provide Plaintiff with a "daily Halal

Menu/Diet." In July 2008, Plaintiff requested that he be provided a "daily Halal Menu/Diet," as well as Halal meals during the upcoming month of Ramadan. Defendant Wells subsequently informed Plaintiff that his request was denied and that "this year Ramadan will be the same bag meals as last year." In September 2008, Plaintiff was provided bag meals during Ramadan.

Plaintiff asserts that the failure by Defendants Harry, Singleton, Wells, Perry, and Burgess to provide him with a "daily Halal Menu/Diet" substantially burdens his ability to practice his religion in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff asserts that the refusal by Defendants Harry, Singleton, Wells, Perry, and Burgess to provide him "Halal foods" during Ramadan likewise substantially burdens his ability to practice his religion in violation of RLUIPA. Plaintiff asserts that Defendants Harry, Singleton, Wells, Perry, and Burgess deprived him of the right to equal protection of the law by refusing to accommodate his religious dietary requests while accommodating the religious dietary requests of Jewish prisoners. Plaintiff asserts that the actions of Defendants Harry, Singleton, Wells, Perry, and Burgess constituted "deliberate indifference," inflicted "emotional distress [and] mental anguish," and furthermore, violated Michigan law.

After being transferred to MCF in January 2006, Plaintiff "began to experience feelings of being light-headed and nauseated after eating in the chow hall." In April 2008, Plaintiff surmised that he only experienced these symptoms on the days that pork was served. On "one particular day," Plaintiff observed that "the non-pork foods were being placed on the serving line next to the open pan of pork meat/gravy." Plaintiff reported to Defendants Brown and Nobles that placing the non-pork food next to the pork food "could be directly responsible for his illnesses."

On May 30, 2008, Plaintiff observed that the non-pork foods were "placed next to the open pan of pork and gravy juices, which were being dripped and spattered into" the non-pork items.

When Plaintiff brought this to the attention of Defendants Smith and Brown, he was "ignored." Plaintiff then brought the matter to the attention of Defendant Nobles, who agreed with Plaintiff "that the pork foods should be placed away from the non-pork foods." As a result, Plaintiff "was deprived of a meal, due to the possibility of the non-pork [items] being contaminated."

On June 10, 2008, a food service inmate "was again dripping pork gravy into the non-pork [items]." As a result, Plaintiff "had to go without a meal." Plaintiff subsequently discussed the matter with Defendants Nobles and Henry, who assured him that the matter would be taken care of. On June 27, 2008, Plaintiff "again noticed that the non-pork food item was being served next to the pork and getting contaminated by the pork gravy dripping into it." Plaintiff attempted without success to resolve the situation with Defendants Smith and Brown. Plaintiff "again was deprived of a meal."

On July 8, 2008, Plaintiff went to the chow hall and "again was subjected to the pork foods contaminating the non-pork" items. In an attempt to "receive a non-contaminated meal," Plaintiff attempted without success to resolve this problem with Defendants Hardy and Perry. Plaintiff was, therefore, "deprived of a meal." On July 10, 2008, Defendant Almy informed Plaintiff that the food service supervisors would be instructed "on how to set up the serving line on pork meal days."

On October 17, 2008, Plaintiff observed that the non-pork items "were again placed next to the pork meat pan." Plaintiff brought this matter to the attention of Defendants Hardy and Smith, who responded, "it doesn't matter, just have someone else serve your tray." Plaintiff responded that "the potatoes were contaminated with pork and having someone else serve him the potatoes do[es] not solve the problem." Plaintiff reported this incident to prison officials who refused to correct the situation. As a result, Plaintiff "again went without a meal." On October 27, 2008, Defendant Henry "assured" Plaintiff "that this problem will not occur again."

On November 14, 2008, Plaintiff "noticed that the pork food was again placed next to the non-pork [food items], which was being contaminated with pork gravy drippings into the potatoes." Plaintiff reported this incident to prison officials. During a subsequent conversation with Defendants Henry, Nobles, and Almy concerning this matter, Defendant Almy told Plaintiff that he was "really getting fed up with [his] constant complaints."

On December 20, 2008, Plaintiff asked Defendant Nobles why he keeps getting "passed over" for "posted job positions." In response, Defendant Nobles informed Plaintiff that he had been "black-balled" by the "food service supervisors" in retaliation for Plaintiff "exercising his Constitutional rights to the First Amendment, of writing letters of complaints, filing grievance and pending civil action."

On January 9, 2009, Plaintiff "entered the chow hall and approached the serving line," at which point he observed that "pork gra[v]y was splattered all around the pan of potatoes." (Dkt. #1 at ¶ 112, Dkt. #1, Exhibit Z1). Plaintiff refused to accept any potatoes from the pan in question. (Dkt. #1, Exhibit Z1). In response, a food service employee told Plaintiff, "just a minute, we'll get some potatoes." (Dkt. #1, Exhibit Z1). Plaintiff chose not to wait for this person to retrieve a pan of non-contaminated potatoes and instead "left the line to be seated to eat the sub[stitute] southwest sandwich filling and broccoli." (Dkt. #1, Exhibit Z1). After eating his meal, Plaintiff attempted to speak with Defendant Almy about this incident. (Dkt. #1, Exhibit Z1). In response, a food service employee informed Plaintiff, "we went to go get you some potatoes and they had just arrived right after you left." (Dkt. #1, Exhibit Z1).

Plaintiff alleges that by forcing him to consume "pork contaminated meals" Defendants Henry, Almy, Hardy, Smith, Brown, and Nobles imposed a substantial burden upon his ability to

practice his religion, in violation of RLUIPA. Plaintiff asserts that this conduct also violated his First Amendment right to freely practice his religion, as well as his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff asserts that Defendants Singleton, Henry, Almy, Hardy, Smith, Brown, and Nobles improperly retaliated against him by intentionally excluded him "from being selected for any posted job positions." Plaintiff alleges that Defendants so acted as retaliation for Plaintiff "complaining through letters, grievances and [a] prior civil action." Plaintiff asserts that Defendants Singleton, Henry, Almy, Hardy, Smith, Brown, and Nobles conspired to retaliate against him. Plaintiff asserts that Defendants Singleton, Henry, Almy, Hardy, Smith, Brown, and Nobles engaged in unlawful discrimination by "intentionally preventing Plaintiff from acquiring any posted job positions." Plaintiff asserts that Defendants Singleton, Henry, Hardy, Smith, Brown, and Nobles subjected him to "infliction of emotional distress" in violation of federal law. Finally, Plaintiff asserts that Defendants Singleton, Henry, Almy, Hardy, Smith, Brown, and Nobles violated Michigan law by interfering with his ability to practice his religion and by subjecting him to "mental anguish." Plaintiff seeks declaratory, injunctive, and monetary relief. Defendants now move for dismissal of Plaintiff's claims.

## ANALYSIS

### I.        Exhaustion

Defendants assert that Plaintiff's claims must be dismissed because Plaintiff has failed to properly exhaust his administrative remedies. The Court only partly agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter*

*v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state

court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the

issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

        As noted above, a prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate

when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

A.    Halal Diet Request Claims

As discussed above, Plaintiff has asserted a variety of claims concerning Defendants' alleged refusal to comply with his Halal diet requests. Defendants have submitted a copy of a grievance Plaintiff submitted regarding this matter: Grievance MCF-08-1000-860-28e. (Dkt. #27, Exhibit 1). Plaintiff submitted this grievance on October 13, 2008, alleging that prison officials had denied his Halal diet requests. Plaintiff's grievance was rejected as untimely filed at all three steps of the grievance process. Plaintiff has not alleged that he filed (or attempted to file) any other grievance regarding his Halal diet requests. Accordingly, the undersigned recommends that Plaintiff's claims regarding Defendants' alleged refusal to comply with his Halal diet requests be dismissed without prejudice for failure to properly exhaust administrative remedies.

B.    Food Contamination Claims

As discussed above, Plaintiff has identified seven incidents in which non-pork food items were allegedly contaminated with pork juices, each of which is addressed separately below.

1.    May 30, 2008

Defendants assert that Plaintiff failed to file a grievance regarding this alleged incident. Plaintiff has not asserted, in either his complaint, response to the present motion, or other pleading, that he filed a grievance concerning this incident. The undersigned recommends, therefore, that Plaintiff's

claims regarding this alleged incident be dismissed without prejudice for failure to properly exhaust administrative remedies.

### 2. June 10, 2008

Defendants assert that Plaintiff failed to file a grievance regarding this alleged incident. Plaintiff has not asserted, in either his complaint, response to the present motion, or other pleading, that he filed a grievance concerning this incident. The undersigned recommends, therefore, that Plaintiff's claims regarding this alleged incident be dismissed without prejudice for failure to properly exhaust administrative remedies.

### 3. June 27, 2008

Defendants assert that Plaintiff failed to file a grievance regarding this alleged incident. Plaintiff has not asserted, in either his complaint, response to the present motion, or other pleading, that he filed a grievance concerning this incident. The undersigned recommends, therefore, that Plaintiff's claims regarding this alleged incident be dismissed without prejudice for failure to properly exhaust administrative remedies.

### 4. July 8, 2008

Defendants assert that Plaintiff failed to file a grievance regarding this alleged incident. Plaintiff has not asserted, in either his complaint, response to the present motion, or other pleading, that he filed a grievance concerning this incident. The undersigned recommends, therefore, that Plaintiff's

claims regarding this alleged incident be dismissed without prejudice for failure to properly exhaust administrative remedies.

5.      October 17, 2008

On November 11, 2008, Plaintiff submitted a grievance regarding this incident.  (Dkt. #27, Exhibit 2).  The grievance was asserted against Defendants Almy, Harry, Hardy, Smith, as well as one other individual (Delores Crosby) who is not a defendant in this matter.  Plaintiff asserted that Defendants were violating his religious rights by subjecting him to "pork contaminated meals."  Plaintiff pursued this grievance through all three steps of the grievance process.  Accordingly, the undersigned concludes that Defendants have failed to sustain their burden as to Plaintiff's RLUIPA and First Amendment Free Exercise claims against Defendants Almy, Harry, Hardy, and Smith concerning this incident.

6.      November 14, 2008

Defendants assert that Plaintiff failed to file a grievance regarding this alleged incident. Plaintiff has not asserted, in either his complaint, response to the present motion, or other pleading, that he filed a grievance concerning this incident.  The undersigned recommends, therefore, that Plaintiff's claims regarding this alleged incident be dismissed without prejudice for failure to properly exhaust administrative remedies.

7.      January 9, 2009

At the time of this incident, Plaintiff was on modified grievance access status.  While on such status, prisoners "shall be able to obtain grievance forms only through the Step I grievance coordinator" who shall provide the necessary grievance form if he "determines that the issue the prisoner. . .wishes to grieve is grievable" and otherwise complies with MDOC grievance policy.  Mich. Dep't of Corr. Policy Directive 03.02.130 at ¶ KK (eff. July 9, 2007).

On January 9, 2009, Plaintiff wrote a letter to Defendant Harry concerning this incident. (Dkt. #1, Exhibit Z1).  Specifically, Plaintiff asserted that the conduct by Defendants Hardy and Almy (and the other food service workers) constituted a "substantial burden" to the exercise of his religion in violation of RLUIPA.  (Dkt. #1, Exhibit Z1).  In response, Defendant Harry instructed Plaintiff to "contact Grievance Coordinator Brevard to request a Step I Grievance as you are currently on modified access."  (Dkt. #1, Exhibit Z4).  On January 17, 2009, Plaintiff submitted a request to the Grievance Coordinator for a Step I grievance form concerning the matters alleged in his January 9, 2009 letter to Defendant Harry.  (Dkt. #1, Exhibit Z5).  Defendants have presented no evidence that the Grievance Coordinator provided Plaintiff with a grievance form.  Accordingly, the Court finds that Defendants have failed to sustain their burden as to the claims asserted in Plaintiff's January 9, 2009 letter to Defendant Harry, namely that Defendants Hardy and Almy violated Plaintiff's rights under RLUIPA.


C.      Retaliation Claims

As discussed above, Plaintiff alleges that Defendants Singleton, Henry, Almy, Hardy, Smith, Brown, and Nobles intentionally excluded him "from being selected for any posted job

positions." Plaintiff alleges that Defendants so acted as retaliation for Plaintiff "complaining through letters, grievances and [a] prior civil action."

On December 20, 2008, Plaintiff requested that the Grievance Coordinator provide him with a grievance form so that he could submit a grievance against Defendants Henry, Almy, Nobles, Hardy, Brown, and Smith for retaliation. (Dkt. #1 at ¶ 109, Dkt. #1, Exhibit Y). Plaintiff alleged that Defendants "intentionally pass[ed] me over for posted job positions for months, [in retaliation] for complaining about violations to my religious beliefs and practices." (Dkt. #1, Exhibit Y). Defendants have presented no evidence that the Grievance Coordinator provided Plaintiff with a grievance form. Accordingly, the Court finds that Defendants have failed to sustain their burden as to the claims asserted in Plaintiff's January 20, 2008 letter to the Grievance Coordinator, specifically that Defendants Henry, Almy, Nobles, Hardy, Brown, and Smith subjected Plaintiff to unlawful retaliation.

In sum, the Court finds that Plaintiff has failed to properly exhaust the claims articulated in his complaint with the following exceptions: (1) Plaintiff's claim, regarding the alleged October 17, 2008 incident, that Defendants Almy, Harry, Hardy, and Smith violated his rights under the First Amendment and RLUIPA to freely practice his religion; (2) Plaintiff's claim, regarding the alleged January 9, 2009 incident, that Defendants Hardy and Almy violated his rights under RLUIPA to freely practice his religion; and (3) Plaintiff's claim that Defendants Henry, Almy, Nobles, Hardy, Brown, and Smith subjected Plaintiff to unlawful retaliation. With the exception of these three particular claims, the undersigned recommends that Plaintiff's claims be dismissed for failure to properly exhaust administrative remedies.

**II.          Failure to State a Claim**

Defendants assert in the alternative that even if Plaintiff has properly exhausted some of the claims articulated in his complaint, such must be dismissed for failure to state a claim on which relief may be granted.

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of a complaint by evaluating the facts asserted therein in a light most favorable to the plaintiff to determine whether the complaint states a valid claim for relief. *See Helfrich v. PNC Bank*, 267 F.3d 477, 480-81 (6th Cir. 2001). To sustain a Rule 12(b)(6) motion, the movant must demonstrate that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Furthermore, while the Court must accept as true the factual allegations in the complaint, such does not extend to legal conclusions. In this respect, the *Iqbal* Court stated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While the notice pleading standard articulated in Federal Rule of Civil Procedure 8 "marks a notable

and generous departure from the hyper-technical code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.

Further, "an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motin." *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) (quoting *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603 (6th Cir. 2005)); *see also*, *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

### 1. October 17, 2008 Incident

On October 17, 2008, Plaintiff observed that the non-pork items "were again placed next to the pork meat pan." Plaintiff brought this matter to the attention of Defendants Hardy and Smith, who responded, "it doesn't matter, just have someone else serve your tray." Plaintiff responded that "the potatoes were contaminated with pork and having someone else serve him the potatoes do[es] not solve the problem." Plaintiff reported this incident to prison officials who refused to correct the situation. Plaintiff asserts that this incident constituted a violation of his right to freely practice his religion as protected by the First Amendment and RLUIPA.

### a. First Amendment

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their

religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Plaintiff's religious beliefs "need not be acceptable, logical, consistent or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714 (1981). However, "[o]nly beliefs rooted in religion are protected by the Free Exercise Clause." *Id.* at 713.

Plaintiff has failed to allege facts sufficient to sustain a claim for violation of his First Amendment rights. With respect to this particular incident, Plaintiff alleges nothing more than his displeasure that a non-pork food item was located in the vicinity of a pork item. Plaintiff does not allege that the non-pork food item *was* "contaminated" with pork, only that such was "possible." (Dkt. #1, Exhibit N). While the First Amendment affords many protections, it does not give to prisoners the right to micromanage a prison's dining facility. Plaintiff alleges that his religious beliefs forbid him from eating pork. With respect to this incident, Plaintiff has failed to allege any facts that Defendants did anything that infringed upon this belief. The undersigned, therefore, recommends that this claim be dismissed for failure to state a claim upon which relief may be granted.

b.     RLUIPA

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." Nonetheless, courts have concluded that a "burden" on religious exercise is "substantial" only where such imposes "a significantly great restriction or onus upon such exercise" which "directly coerces the religious adherent to conform his or her behavior accordingly." *Sanders v. Ryan*, 484 F.Supp.2d 1028, 1034 (D. Ariz. 2007) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005).

To come within the scope of RLUIPA the burden in question must render religious exercise "effectively impracticable." *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). Moreover, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise." *See, e.g., Konikov*, 410 F.3d at 1323. These conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761. Plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened. *See Kaufman v. Schneiter*, 474 F.Supp.2d 1014, 1025 (W.D. Wis. 2007).

Again, as discussed above, Plaintiff has alleged nothing more than his displeasure that a non-pork food item was located in the vicinity of a pork item. Plaintiff's religion forbids him from eating pork. With respect to this particular incident, Plaintiff has failed to allege facts that Defendants forced him to eat pork or otherwise violate his religion. Accordingly, the undersigned recommends that this claim be dismissed for failure to state a claim on which relief may be granted.

2.      January 9, 2009 Incident

When Plaintiff entered the chow hall on January 9, 2009, he observed that pork gravy "was splattered all around the pan of potatoes." Plaintiff refused to accept any potatoes from the pan in question. Plaintiff was then instructed by a food services worker to wait "just a minute, we'll get some potatoes." Plaintiff chose not to wait for the potatoes and instead ate a different item. Plaintiff was subsequently informed by a food service employee that, "we went to go get you some potatoes and they had just arrived right after you left."

These allegations fail to state a claim on which relief may be granted. Plaintiff has not alleged that he was forced to consume pork or otherwise violate his religious beliefs. When Plaintiff expressed his displeasure with the fact that the potatoes were located next to the pork, food service officials attempted to placate Plaintiff by serving him potatoes from a different container. Plaintiff, however, chose not to wait for potatoes and instead ate a different food item. Such does not constitute a violation of Plaintiff's rights. Again, Plaintiff is simply voicing his displeasure with the manner in which prison officials operate a dining facility. RLUIPA does not extend to an inmate the right to micromanage the dining facility of the prison in which he is incarcerated. The undersigned

recommends, therefore, that Plaintiff's RLUIPA claim regarding this incident be dismissed for failure to state a claim on which relief may be granted.

           3.      Retaliation Claims

Plaintiff alleges that Defendants Henry, Almy, Nobles, Hardy, Brown, and Smith "intentionally pass[ed] me over for posted job positions for months, [in retaliation] for complaining about violations to my religious beliefs and practices."

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff asserts that Defendants passed him over for various work assignments because he had written letters of complaint, filed grievances, and pursued legal action. Such allegations are sufficient in the context of a motion to dismiss to satisfy the first element of the analysis.

With respect to the second step of the analysis, the Sixth Circuit has indicated that "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603 (quoting *Thaddeus-X*, 175 F.3d at 398). Accordingly, "unless

the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603 (quoting *Thaddeus-X*, 175 F.3d at 398). Plaintiff alleges that he "ke[pt] signing up for posted job positions," but was routinely "passed over" for such by Defendants. (Dkt. #1 at ¶ 103). While perhaps a close call, the undersigned concludes that depending on the specific circumstances of the positions in question, Plaintiff's failure to obtain such could constitute an adverse action.

With respect to the third prong of the analysis, the Court recognizes that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nevertheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

Plaintiff asserts that candidates for prison jobs are selected by seniority. (Dkt. #1, Exhibit V). Plaintiff asserts that with respect to the positions for which he applied, he was the candidate with the most seniority. (Dkt. #1, Exhibit V). Plaintiff asserts that when he asked why he was not selected for any of the positions in question, Defendant Nobles informed him that he had been "black-balled." (Dkt. #1 at ¶ 103). Plaintiff asserts that he was black-balled in retaliation for engaging in the aforementioned protected conduct. (Dkt. #1 at ¶ 104). While Defendants may very well be able to submit evidence entitling them to summary judgment, the allegations in Plaintiff's complaint are sufficient to survive a motion to dismiss under Rule 12(b)(6).

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion to Dismiss</u>, (dkt. #26), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims be dismissed, as discussed herein, except for his retaliation claims against Defendants Henry, Almy, Nobles, Hardy, Brown, and Smith which be permitted to go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: January 26, 2010                    /s/ Ellen S. Carmody_____
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge